Nancolas & Howard v. Hitaffer & Prouty, Defendants,
and William Bartlett, Appellant.

**Mechanics' liens:** REPAIR OF MATERIAL FURNISHED.  A charge for re-
1  pairing a door lock which is necessary to put a building in
condition for delivery under the contract of construction, when
made in good faith, is lienable under the statute.

**Same:** MATERIAL MEN: LIABILITY OF OWNER.  The owner of a build-
2  ing in process of construction, who, with knowledge of the
furnishing of material for which a lien will exist, pays claims
of a different character from a reserve fund in his hands due
the contractor, is liable for the lienable charge.

**Same.**  Where a building in process of construction under contract
3  collapses, and by a new agreement with the contractor the
owner is to furnish the additional material to rebuild and he
induces material men to continue furnishing the same, he be-
comes liable to them for the material so furnished; and it is
immaterial that the reconstruction cost him more than he
agreed to pay in his original contract; especially where he was
as much to blame for the collapse as the contractor.

**Same:** STATEMENT OF CLAIMS: FALSE CHARGES.  In order to defeat
4  a mechanic's lien because of improper charges it must appear
that the statement is so incorrect as to be fraudulent.

**Abandonment of contract.**  Where a building in process of con-
5  struction collapsed, it is held that the evidence did not show
an abandonment of the work by the contractor so as to author-
ize the owner to use the reserve funds in his hands for the
purpose of reconstruction, and thus defeat claims of one fur-
nishing material prior and subsequent to the collapse.

*Appeal from Emmet District Court.*— Hon. A. D. Bailie,
Judge.

Friday, June 7, 1907.

Rehearing Denied, Tuesday, November 19, 1907.

Suit in equity to establish the lien of a subcontractor.
There was a judgment for the plaintiff from which the de-
fendant Bartlett appeals.— *Affirmed.*

*J. G. Myerly,* for appellant.

*Byron M. Coon* and *E. A. Morling,* for appellees.

SHERWIN, J.— In May, 1902, the defendants, Hitaffer & Prouty, entered into a written contract with the appellant Bartlett, by the terms of which they agreed to build for Bartlett, for the sum of $10,670, a three-story brick building and to furnish all labor and material for the same according to the plans and specifications of Bartlett's architect. At about the time this contract was entered into, the contractors entered into a contract with the plaintiffs herein, by the terms of which the plaintiffs were to furnish all hardware necessary for the construction of the Bartlett building. The plaintiffs furnished hardware and builders' material in accordance with the terms of their contract, until the building collapsed during the progress of the work thereon. They also furnished material which went into the building after its reconstruction commenced, and this action is to establish and enforce a mechanic's lien for the material so furnished. A portion of the building collapsed in August, 1902, at which time, as we understand the record, less than a third of the material furnished by them had been used in the building. The last item of the material furnished was on March 18, 1903; and this charge was for repairs to a Yale lock. The next preceding charge was on February 3d, and the statement and affidavit for a lien were filed on the 3d day of April, 1903. The appellants claim that the charge of March 18th is not a lienable item, and this presents one of the questions for determination in this case.

It is largely a question of fact, and, the trial court having found adversely to the appellant's contention, we shall 1. MECHANICS' not consider at length the evidence supporting LIENS: repair of material its finding. It appears from the record, howfurnished. ever, that a Yale lock was furnished for the front door of the building, and put in place some time prior

to the 18th of March.    In attempting to make it work more readily, one of the contractors took it off of the door and took it to pieces, and while doing so lost some of the parts connected with the lock proper, which necessitated returning the lock to the factory for repairs.    It was returned to the plaintiffs herein, and by them returned to the manufacturers, and was afterwards sent back to them and delivered to Bartlett himself.    There was a charge for repairing the lock and for expressage thereon.    We think the item a lienable one under the statute, which provides a lien for " any materials . . . or fixtures for any building," etc.    The contractors undertook to furnish the building with the lock in question, and it was to be delivered over to the appellant in good working order, and, if it became necessary to have it repaired in order to so deliver it, it was proper for the contractors or for the plaintiffs as subcontractors acting under their direction to have necessary repairs thereon made, and to make a charge therefor.    If this was done in good faith, and not for the purpose of extending the time in which the lien might be filed, we see no reason for holding the item not lienable.    So far as the authorities have been called to our attention, they seem to establish a rule in accordance with this conclusion. *Jefferson Water Supply Co. v. Riter,* 138 Ind., 170 (37 N. E. 652); *Monaghan v. Putney,* 161 Mass. 338 (37 N. E. 171); *Miller v. Wilkinson,* 167 Mass. 136 (44 N. E. 1083); *Great Spirits Springs Co. v. Chicago Lumber Co.,* 47 Kan. 672 (28 Pac. 714); *Conlee v. Clark,* 14 Ind. App. 205 (42 N. E. 762, 56 Am. St. Rep. 298).    In *Turner v. Wentworth,* 119 Mass. 459, a small amount of additional work was done at the owner's request several months after the other work was performed.    The court there says: " The evidence shows that the petitioners did some labor and furnished some materials used in the erection of the building within the thirty days.    If this was done in good faith for the purpose of completing their contract, and not colorably in order to revive

their lien, the thirty days would begin running from the time they thus performed labor and furnished materials."

By the terms of Bartlett's contract with Hitaffer & Prouty, he was to make semimonthly payments on the estimates of his architect, reserving in all cases twenty per cent. of such estimates to protect himself. The evidence shows, and the trial court so found, that the account sued on herein began to run while Bartlett was making payments to the contractors in accordance with the contract, and while there were funds in his hands due the contractors which he afterwards paid out upon estimates which were not liens upon the premises, and for which no liens were ever claimed. It appears from the record that Bartlett knew very soon after the work on this building commenced that the hardware was being furnished by these plaintiffs; and, this being true, he had no right to pay out the reserve funds which he held in his hands on other claims for which no lien had been filed, and, having done so, he is liable for the plaintiff's claim, unless the conditions raised by the collapse of the building shall be held to relieve him of such liability. *Queal v. Stradley,* 117 Iowa, 748; *Green Bay Lumber Co. v. Adams,* 107 Iowa, 672; *Green Bay Lumber Co. v. Thomas,* 106 Iowa, 154; *Othmer v. Clifton,* 69 Iowa, 656.

2. SAME: material men: liability of owner.

After the collapse of the building, the contractors and Bartlett entered into a contract, whereby it was to be reconstructed without at that time determining who was responsible for the collapse, and the practical effect of this contract was to put the entire building under the management and control of Bartlett; he agreeing to pay for the additional material and labor necessary to carry on the work. There is also testimony tending to show that Bartlett by his statements induced the plaintiffs to continue furnishing material for his building, relying for their pay on him rather than on the contractors. In view of this testimony and his control over the building and the payments

3. SAME.

made by him for other material and for labor during the reasonable reconstruction of the building, we think the district court properly held him liable for the material furnished by the plaintiffs after the collapse.

The appellant contends that the reconstruction of the building made necessary by its collapse cost him much more than he had agreed to pay in his original contract, and that he was entitled to use all the money remaining in his hands after making payments according to the terms of the contract for the purpose of the reconstruction. This might be true under ordinary circumstances, but the record before us convinces us that, if the appellant was not directly responsible for the collapse of the building on account of faulty plans and specifications, he was at least chargeable with as much fault as were the contractors, and that he is now in no situation to make the claim as against the plaintiffs' right that he be permitted to reconstruct his building with the funds which would otherwise have gone to the plaintiffs.

The appellant further contends that the plaintiffs' lien should not be established because the itemized statement therefor contained charges for items which are not properly lienable. This condition will not defeat the right to a lien, unless it be shown that the plaintiffs were knowingly attempting by false charges to subject the defendants' property to an improper burden. In other words, in order to defeat the right to a lien, it must be made to appear that the statement is so incorrect as to be fraudulent. *Queal v. Stradley, supra; Lumber Co. v. Miller,* 98 Iowa, 468; *Lumber Co. v. Davis,* 105 Iowa, 27.

**4. SAME: statement of claims: false charges.**

The appellant also claims that Hitaffer & Prouty abandoned the building after its reconstruction had been partially accomplished, and, relying upon this claim, they contend that he was authorized to complete the building, using therefor the reserve fund which he had on hand at the time of its

**5. ABANDONMENT OF CONTRACT.**

collapse and the balance of the original contract price. The evidence does not support the claim of an abandonment of the building by the contractors. It is true that they stated to the appellant, after the collapse, that they were without sufficient funds to purchase material and guaranty the payment of the laborers engaged thereon, and in effect arranged with the appellant to make advance payments, but they continued at work on the building, as we understand the record, until it was completed, and, while Bartlett was the general overseer thereof, they put in their time and their labor on the contract which they had undertaken. This surely cannot be construed into an abandonment as claimed by the appellant.

The trial court reached the right result in this case in our opinion, and the judgment must be, and it is *affirmed.*