*A. F. Hayden & G. D. Burrage,* for the petitioners.

---

LEVI A. THURSTON & another *vs.* W. W. BLUNT.

Essex. November 6, 1913. — December 15, 1913.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & DE COURCY, JJ.

*Practice, Civil,* Exceptions. *Mechanic's Lien.*

If a judge before whom a case has been tried without a jury understands that the unsuccessful party wishes to except to all the rulings set forth in the judge's memorandum of his findings of fact, the exception is taken.

Where a proceeding at law has been tried without a jury and the judge reserves his decision, an exception taken on the second court day after the excepting counsel received notice of the rulings made by the judge is taken seasonably.

A judge of the Superior Court, who, without a jury, heard a petition to establish a mechanic's lien, filed findings and rulings on a Thursday, notice of which was given to the attorneys of record on the next day. Saturday was a legal holiday. On Tuesday the attorney for the petitioner waited upon the judge and stated to him that "the petitioner excepted to the rulings," without indicating "what particular rulings he excepted to, whether to the refusal to adopt certain requests filed by him or to the adoption of certain requests filed

by the respondent." *Held,* that the statement made by the attorney for the petitioner to the judge on Tuesday was sufficient to save an exception to all of the rulings set forth in the findings and rulings filed by the judge; and, *also,* that the exceptions were saved within a reasonable time after the rulings excepted to were made.

A judge who, without a jury, heard a petition for the enforcement of a mechanic's lien, found that the petitioner was a subcontractor who furnished the plumbing and heating for the respondent's house under a contract with the general contractor which, among other things, required him to do "first class work" and to leave "everything in a first class condition, ready for immediate use;" that the petitioner "substantially completed" his contract in August of a certain year, that at that time "there was a slight leak in the connecting pipes between the boiler and the range," and that the hot water disc had been put on the cold water faucet and *vice versa,* that the leak was not caused by use but was due to improper work of the petitioner, that the contractor in August had called the leak to the petitioner's attention, but that he then did not make repairs, informing the contractor that he thought that as time went on the joints would tighten and the leaks would stop. About a month later the respondent wrote to the petitioner calling attention to the leak and requesting that he stop it and also change the discs, that five days afterward, acting "in good faith solely for the purpose of repairing improper work previously done" and "to correct defective performance by [the] petitioner of the contract with" the general contractor, the petitioner went to the respondent's house and spent two and one half hours doing the things necessary to put the work in first class condition. The statement of the lien was filed within thirty days thereafter. The judge ruled that the lien was not "revived" by the work above described and that the statement was not filed seasonably, and found generally for the respondent. *Held,* that the petitioner's work above described was in completion of his contract with the general contractor, to place "everything in a first class condition;" that the contract was not performed until that date, and that the lien was filed seasonably.

LORING, J. This is a petition for a mechanic's lien tried by a judge * sitting without a jury. At the trial both the parties asked for rulings. The judge reserved his decision and later filed his findings of fact and rulings of law. The findings and rulings were filed on Thursday, February 20, 1913. Notice of them was given to the attorneys of record on Friday, February 21. On Tuesday, February 25, the petitioners' attorney waited upon the judge and stated to him that "the petitioners excepted to the rulings." But he "did not indicate what particular rulings he excepted to, whether to the refusal to adopt certain requests filed by him or to the adoption of certain requests filed by the respondent." †

---

* *Hitchcock, J.*

† In a "certificate of facts relative to saving of exceptions by the petitioners,"

On these facts the respondent contends that no exceptions were saved. But we are of opinion that the statement made by the petitioners' attorney on February 25 was sufficient to save an exception to all the rulings set forth in the judge's findings of fact. To save an exception no form of words is necessary; it is enough that the judge understands that the party wishes to save an exception. *Leyland* v. *Pingree,* 134 Mass. 367, 370. *Thwing* v. *Clifford,* 136 Mass. 482. *Newton* v. *Worcester,* 169 Mass. 516. *Jones* v. *Newton Street Railway,* 186 Mass. 113, 114.

We are also of opinion that the exceptions were saved in time. Where a case is tried without a jury and the judge reserves his decision (there being no rule of court dealing with the matter), an exception must be saved within a reasonable time after the ruling of law excepted to is made. That is settled. The rule is fully explained in the recent cases of *Richards* v. *Appley,* 187 Mass. 521, *Graves* v. *Hicks,* 194 Mass. 524, and *Hurley* v. *Boston Elevated Railway,* 213 Mass. 192. In the case at bar, Saturday, February 22, being a holiday, the exceptions were saved on the second court day next after the attorney received notice of the rulings made. That was within a reasonable time. It follows that the exceptions are properly before us.

We are of opinion that the exceptions must be sustained. It was found by the judge that the petitioners were hired as subcontractors to do and furnish the plumbing and heating for a house being built for the respondent by one Smith as general contractor. Included in the petitioners' contract was the installation of a range and boiler with connecting pipes. By their contract the petitioners were bound to "furnish the plumbing and heating for the building complete, doing first class work and leaving everything in a first class condition, ready for immediate use." The judge found that "the petitioners substantially completed their contract in August" 1910. But that at that time "there was a slight leak in the connecting pipes between the boiler and the range," and that they had put the hot water disc on the cold

the judge, after reciting facts, among which were those stated above, stated: "After hearing the parties upon the question of the allowance of the petitioners' bill of exceptions, the respondent's objections thereto were overruled and the court finds that it was the intention of the petitioners to save exceptions to the rulings and that the same were seasonably saved."

water faucet and *vice versa.* At that time although the attention of the petitioners "was called by contractor Smith to this leak in the kitchen, they did not repair the same, thinking, and so informing the contractor, that as time went on the joints would tighten and the leaks would stop." On September 23, 1910, the respondent "wrote a letter to the petitioners calling their attention to the leak and requesting that they go to his house and stop the same and also change the hot and cold discs" already referred to. "On September 28, the petitioners went to the house of the respondent Blunt and drew off the water from the fixtures and proceeded to do the necessary work, taking out the pipes, putting red lead upon the joints of the same, screwing the same tighter, and putting the said work in first class condition. The petitioners also changed the labels on the hot and cold water pipes. . . . After completing these repairs and changes the water was turned on again, the work thoroughly tested, and all this consumed a period of about two hours and one half. . . . The leak was not caused by any use which had been made of the range, the boiler or the piping, but had existed, to a greater or less extent, from the time the work was first done, owing to the fact that the joints were not sufficiently leaded and the pipes were not screwed together in a manner sufficiently tight. . . . Said lien was filed within thirty days thereafter." * The judge further found that the respondent's letter of September 23 "was a request for them [the petitioners] to remedy their defective work under the Smith contract," and that the repairing of the leak and changing the discs on September 28 "was done in good faith solely for the purpose of repairing improper work previously done," and "to correct defective performance by [the] petitioners of the contract with Smith." In addition to making these findings of fact the judge ruled that there was "no evidence in the case to warrant a finding that the petitioners performed the said labor fraudulently for the purpose of establishing a lien." Having made these findings of fact and this ruling of law, the judge at the respondent's request ruled "that a lienor cannot revive a lien by merely repairing his defective work after his contract has been completed;" that "these petitioners did not revive or keep alive

---

* On October 27.

their lien acquired by virtue of the Smith contract by what they did on or about September 28," and "that it (the certificate) was not seasonably filed;" and he made a general finding for the respondent.

The three rulings made by the judge at the respondent's request were wrong. By the terms of their contract with Smith the petitioners had not completed the plumbing and heating which they had to do under that contract until "everything [was] in a first class condition, ready for immediate use." When the petitioners stopped work at the end of August, their work had not been completed. Apparently they expected "that as time went on the joints would tighten and the leaks would stop," but they did not. Under these circumstances at any rate they had not left "everything in a first class condition, ready for immediate use." On the facts found by the judge the work was not completed until September 28, and the statement, "being filed within thirty days thereafter," was seasonably filed. *Worthen* v. *Cleaveland*, 129 Mass. 570. *Monaghan* v. *Putney*, 161 Mass. 338. *Miller* v. *Wilkinson*, 167 Mass. 136. *McLean* v. *Wiley*, 176 Mass. 233. *Shaughnessy* v. *Isenberg*, 213 Mass. 159. The first decision in *Worthen* v. *Cleaveland*, 129 Mass. 570, is strongly relied on by the respondent. But that decision went on the ground that on the evidence then in the case the petitioner's right to do any work under the contract had come to an end before he did the work on which he relied to bring the filing of his statement within the thirty days. At the second trial of *Worthen* v. *Cleaveland*, reported *ubi supra*, there was evidence to the contrary, and a finding that the statement was seasonably filed was held to be correct. For a case like the first decision in *Worthen* v. *Cleaveland*, *ubi supra*, see *O'Driscoll* v. *Bradford*, 171 Mass. 231.

*Exceptions sustained.*

*F. H. Tarr*, for the petitioners.
*E. O. Howard*, for the respondent.

As STATED in the Memoranda on page 303, Mr. Justice MORTON resigned on December 15, 1913.